David Pierce (SBN 150231)
dpierce@dhpierce.com
Codette Wallace (SBN 116324)
cwallace@dhpierce.com
Larry Liu (SBN 175799)
lliu@dhpierce.com
**DAVID H. PIERCE & ASSOCIATES PC**
15260 Ventura Boulevard, Suite 730
Sherman Oaks, CA 91403
Tel: (818) 826-5480
Fax: (818) 826-5486

Attorneys for Plaintiff
ELIE SAKAYAN

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIE SAKAYAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HARRY ZABILOV, an individual, ENZOLYTICS, INC., a Delaware corporation; IMMUNOTECH LABORATORIES, INC., a Nevada Corporation, and DOES 1 – 50,<br><br>Defendants. | Case No. 2:22-cv-06618-MWF-SK<br><br>**VERIFIED FIRST AMENDED COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br>2. **BREACH OF THE IMPLIED COVENNANT OF GOOD FAITH AND FAIR DEALING**<br>3. **BREACH OF FIDUCIARY DUTY**<br>4. **FRAUD** |

Plaintiff Elie Sakayan ("Sakayan") alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds $75,000 and there is a complete diversity of citizenship between the Plaintiff and Defendants.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred in this district.

1

## PARTIES

3. Sakayan is and at all times alleged herein was an individual residing in Pasadena, California.

4. Sakayan is informed and believes, and on that basis alleges, that Defendant Enzolytics, Inc. ("Enzolytics") is a Delaware corporation with its principal place of business in Plano, Texas.

5. Sakayan is informed and believes, and on that basis alleges, that Enzolytics' principal place of business was and remained in Monrovia, California, during all relevant times alleged herein. Enzolytics' principal place of business did not change to Plano, Texas, until after all relevant times alleged herein, i.e., on or about April 16, 2020.

6. Sakayan is informed and believes, and on that basis alleges, that Defendant Immunotech Laboratories, Inc. ("Immunotech") is a Nevada corporation with its principal place of business in Frisco, Texas.

7. Sakayan is informed and believes, and on that basis alleges, that Immunotech was initially incorporate in California on or about December 31, 2007, with its principal place of business in Glendale, California.

8. Sakayan is informed and believes, and on that basis alleges, that Immunotech acquired International Technology Systems, Inc., a Nevada corporation, on or about December 15, 2008, in a reverse merger with Immunotech being the surviving or successor entity. Following the merger, Immunotech's principal place of business was and remained in Monrovia, California, during all relevant times alleged herein. Immunotech's principal place of business did not change to Frisco, Texas, until after all relevant times alleged herein.

9. Sakayan is informed and believes, and on that basis alleges, that Defendant Harry Zhabilov ("Zhabilov") is a resident of Frisco, Texas.

1   10.   Sakayan is informed and believes, and on that basis alleges, that Zhabilov was an individual residing in California during all relevant times alleged herein.

11.   The true names and capacities of various other defendants, whether corporate, individual, or otherwise, are at this time unknown to Sakayan, but may include agents, alter egos, directors, employees, joint venturers, officers, partners, or servants of the named defendants.  Sakayan will amend this Complaint, if necessary, when the true names, capacities, and actions of these various other defendants, Does 1 to 25, are ascertained.  Sakayan is informed and believes, and on that basis alleges, that each of these fictitiously named defendants is responsible in some manner for the events and injuries to Sakayan as alleged herein.

12.   The true names and capacities of various other defendants, whether corporate, individual, or otherwise, are at this time unknown to Sakayan, but may include agents, alter egos, directors, employees, joint venturers, officers, partners, or servants of the named defendants.   Sakayan will amend this Complaint, if necessary, when the true names, capacities, and actions of these various other defendants, Does 26 to 50, are ascertained.  Sakayan is informed and believes, and on that basis alleges that each of these fictitiously named defendants were the agents or co-conspirators of each other and were acting in the course and scope of such agency or conspiracy.  These fictitiously named defendants also accepted, approved, directed, or ratified all or part of the wrongful acts of their agents, employees, or co-conspirators alleged herein.  Moreover, at the time of the wrongful conduct alleged in this Complaint, each of these fictitiously named defendants was the agent, alter ego, employer, or co-conspirator of the named defendants, and they were acting within the course and scope of said agency, employment, or conspiracy in perpetrating the wrongful conduct alleged herein.

# FACTUAL ALLEGATIONS

### Agreements to Transfer Shares of Immunotech Stock to Sakayan

13. On or about November 4, 2008, Sakayan, doing business as Dow Jones Link, entered into a fee agreement with Immunotech whereby Sakayan was to receive a 5% irrevocable interest in Immunotech in exchange for certain services that he agreed to provide the company ("November 2008 Fee Agreement").

14. On March 17, 2014, Sakayan entered into a settlement agreement with Immunotech whereby Sakayan was promised 40,000,000 shares of Immunotech stock ("March 2014 Settlement Agreement"). Zhabilov signed the 2014 Settlement Agreement.

15. On May 14, 2014, Immunotech agreed to transfer 40,000,000 shares of Immunotech stock to Sakayan in compensation for certain services that Sakayan had rendered ("May 2014 Transfer Agreement"). Zhabilov signed the May 2014 Transfer Agreement.

16. On March 20, 2016, Sakayan entered into a consulting fee agreement with Immunotech whereby Sakayan was to receive a 1% interest in Immunotech which amounted to 5,560,252 shares of Immunotech stock in exchange for certain services that Sakayan had rendered ("March 2016 Fee Agreement"). Zhabilov signed the March 2016 Fee Agreement.

17. On March 31, 2016, Billy Ray ("Ray"), Immunotech's Chief Financial Officer, sent an email to Sakayan memorializing an agreement to transfer 250,000 shares of Immunotech stock to Sakayan in exchange for $250 ("March 2016 Purchase Agreement"). Zhabilov approved the March 2016 Purchase Agreement.

18. Yet, despite the plain and unambiguous provisions of the agreements, Sakayan has not received any of the shares promised to him in the March 2014 Settlement Agreement, the May 2014 Transfer Agreement, the March 2016 Fee Agreement, or the March 2016 Purchase Agreement (collectively "Contracts").

19. The Contracts were entered into in California.

**Sakayan's Shares of Immunotech Stock**

20. Pursuant to the November 2008 Fee Agreement and separate purchases of shares of Immunotech stock, Sakayan holds title to the following shares of Immunotech stock:

| Owner | Certificate No. | Certificate Date | No. of Shares |
|---|---|---|---|
| Elie Sakayan | 3056 | April 3, 2014 | 40,000,000 |
| Elie Sakayan | 3058 | May 19, 2014 | 10,000,000 |
| Elie Sakayan | 3109 | December 1, 2014 | 1,219,386 |
| Elie Sakayan | 3116[1] | January 22, 2016 | 525,000 |
| Elie Sakayan | IB Brokerage Account[2] | March 1, 2016 | 72,600 |
| Elie Sakayan | 3123[1] | May 11, 2016 | 525,000 |
| Dow Jones Link | 3124 | May 11, 2016 | 45,239 |
| Elie Sakayan | 3130 | August 21, 2017 | 20,000 |
| Elie Sakayan | 3134 | September 19, 2017 | 250,000 |
| **Total** | | | 52,962,780 |

21. Sakayan acquired the above shares of Immunotech stock while in California.

22. Further, as alleged above, Immunotech failed to transfer shares of Immunotech stock to Sakayan pursuant to the March 2014 Settlement Agreement, the May 2014 Transfer Agreement, the March 2016 Fee Agreement, and the March 2016 Purchase Agreement. Sakayan is thus entitled to 85,810,252 additional shares of Immunotech stock.

---

[1] Sakayan purchased shares of Immunotech stock which were originally owned by Carl Ray Davidson, Certificate Nos. 3116 and 3123.

[2] These shares are held in a street name.

23. Therefore, Sakayan's ownership in Immunotech is at least 138,773,032 shares. Sakayan also retains a 5% irrevocable interest in Immunotech, not subject to dilution, pursuant to the November 2008 Fee Agreement, and thus, Sakayan is further entitled to any additional shares of Immunotech stock commensurate with that ownership interest.

### Attempted Merger Between Immunotech and Enzolytics

24. Sakayan is informed and believes, and on that basis alleges, that on or about March 9, 2017, Immunotech entered into a merger agreement with Eco-Petroleum Solutions, Inc. ("ECPO"), a predecessor to Enzolytics, whereby ECPO would acquire all the outstanding shares of Immunotech stock in exchange for shares of ECPO stock.

25. Sakayan learned about the merger from a company insider and immediately sought more information directly from Immunotech. Sakayan's attorneys repeatedly sent letters to Zhabilov in June 2017 requesting additional information about the merger.

26. On or about June 22, 2017, Zhabilov represented to Sakayan that "[n]o assets of Immunotech have been transferred to anyone." Sakayan is informed and believes, and on that basis alleges, that this representation was knowingly false when made.

27. Subsequently, on or about June 29, 2017, Zhabilov emailed Sakayan stating, "[a]ll these shares or [sic] yours in [Immunotech], I am willing to exchange them 1 to 1 to shares of ECPO. Also all your people can exchange thee [sic] shares as well." Zhabilov also sent Sakayan a proposed stock agreement to exchange Sakayan's shares of Immunotech stock for shares of ECPO stock.

28. However, before the proposed stock agreement could be signed, on or about January 15, 2018, the merger agreement between Immunotech and ECPO was terminated.

29. Sakayan is informed and believes, and on that basis alleges, that not all provisions of the merger agreement were terminated, and that pursuant to Section 1.03(d)(i) of the merger agreement, Zhabilov was appointed as President and Chairman[3] of ECPO.

30. Sakayan is informed and believes, and on that basis alleges, that ECPO changed its name to Enzolytics on or about March 22, 2022.

31. On April 9, 2018, Sakayan's attorney wrote to Ray asking that he confirm that Immunotech had not been abandoned. Ray responded by email that Immunotech had "not been abandoned." Sakayan believed Ray's representation, and based on it, Sakayan ceased investigating the status of Immunotech's assets. Ray's representation would turn out to be false. Sakayan is informed and believes, and on that basis alleges, that this representation was made with the consent and at the direction of Zhabilov. Sakayan is further informed and believes, and on that basis alleges, that this representation was known to be false both by Ray and Zhabilov when made.

32. In or about February 2021, Sakayan learned from a company insider that Immunotech may have entered a licensing deal with Enzolytics without informing Immunotech's shareholders.

33. On February 16, 2021, Sakayan emailed Zhabilov and others to request a meeting on behalf of Immunotech shareholders to obtain more information about the relationship between Immunotech and Enzolytics. Zhabilov refused to schedule a meeting.

34. On May 11, 2021, Sakayan emailed Zhabilov to resolve matters between them. Rather than engage in a discussion with Sakayan, Zhabilov's attorney responded to Sakayan's email by directing Sakayan to "cease direct communications to either Harry Zhabilov or Enzolytics."

---

[3] The term "President" and "Chief Executive Officer" appear to have been used interchangeably.

35. Sakayan has ***never*** received an answer as to what happened to Immunotech's assets, and Zhabilov has continuously and unlawfully refused to allow Sakayan to inspect Immunotech's books and records.

### Asset Purchase by Enzolytics

36. Sakayan is informed and believes, and on that basis alleges, that on or about March 26, 2018, Immunotech and Enzolytics entered into an asset purchase agreement ("Asset Purchase Agreement") whereby Enzolytics acquired, among other things, the exclusive licensing agreement for a patented immunotherapy treatment for the care of HIV/AIDS and Hepatitis C patients ("Patented Treatment"); a 49% ownership interest in Immunotech Laboratories BG; and all equipment and intellectual property associated with the Patented Treatment. In exchange, Enzolytics issued shares of Enzolytics stock to Immunotech and assumed certain debts of Immunotech, including $1,550,000 owed to the Zhabilov Trust; $530,000 owed to the Camelot Nevada Trust; $224,469 owed on investor loans; and $282,500 owed on other advances.

37. Sakayan is informed and believes, and on that basis alleges, that shares of Enzolytics stock issued to Immunotech pursuant to the Asset Purchase Agreement were not in fact held by Immunotech or distributed equally to Immunotech's shareholders, but instead, the shares of Enzolytics stock were given directly to Zhabilov and a select few favored shareholders, i.e., 4,000,000 shares of Enzolytics preferred stock to Zhabilov; 71,900,000 shares of Enzolytics common stock to Dimitar Savov ("Savov"); and 50,000,000 shares of Enzolytics preferred stock and 175,000,000 shares of Enzolytics common stock to the Zhabilov Trust, whose trustee is Zhabilov's wife, Diana Zhabilov.

38. Sakayan is informed and believes, and on that basis alleges, that assets sold by Immunotech to Enzolytics (i.e., the Patented Treatment, 49% ownership interest in Immunotech Laboratories BG, and all equipment and intellectual

property associated with the Patented Treatment) were valued at approximately $10,213,860.

39. Sakayan is informed and believes, and on that basis alleges, that the assumed debt and Enzolytics stock issued as part of the Asset Purchase Agreement were only valued at approximately $2,617,059. As such, Enzolytics paid inadequate consideration for the assets purchased from Immunotech.

40. Sakayan is informed and believes, and on that basis alleges, that the Patented Treatment was Immunotech's principal asset, and by entering into the Asset Purchase Agreement, Immunotech gave away its only significant asset, leaving an empty husk or shell of a company.

41. Sakayan is informed and believes, and on that basis alleges, that following the Asset Purchase Agreement, Immunotech stopped operating as an ongoing business. Immunotech has failed to publish an annual or quarterly report or other information disclosure statement since February 3, 2017. In turn, Enzolytics' Quarterly Reports continue to list "Immunotech Laboratories, Inc." as a predecessor to Enzolytics as of September 11, 2017. (*See* Enzolytics, Inc., Quarterly Report for the Period Ending: March 31, 2022, at p. 2, https://www.otcmarkets.com/otcapi/company/financial-report/332996/content.)

42. Thus, Sakayan is informed and believes, and on that basis alleges, that Enzolytics intended to enter the drug development industry for immunotherapies by merging with Immunotech, which was already in that industry. However, when the merger fell through, Enzolytics changed course and pursued a de facto merger to enter that industry by means of the Asset Purchase Agreement.

43. Sakayan is informed and believes, and on that basis alleges, that Zhabilov was President and Chairman of Immunotech in 2017 and 2018. Further, as of December 31, 2016, Zhabilov owned 40,000,000 shares of Immunotech Series A preferred stock (which amounted to 66% of such stock issued), 90,000,000 shares of Immunotech Series B preferred stock, and 16,678,000 shares of

Immunotech common stock. Zhabilov was an officer and director of Immunotech at all relevant times herein.

44. Sakayan is informed and believes, and on that basis alleges, that at the time of the Asset Purchase Agreement, Immunotech had three directors: Zhabilov, Savov, and Valentine Iordanov Dimitrov. Subsequently, Zhabilov became the sole director and remains Immunotech's sole director as of the date of the filing of this First Amended Complaint.

45. Sakayan is informed and believes, and on that basis alleges, that Zhabilov was President and sole director of Enzolytics beginning on March 9, 2017, and in 2018. Further, as of June 18, 2018, Zhabilov owned 4,000,000 shares of Enzolytics Series A preferred stock, which he received on March 13, 2018, near the time of the Asset Purchase Agreement. Zhabilov was an officer and director of Enzolytics at all relevant times herein.

46. Accordingly, the Asset Purchase Agreement was between Immunotech and Enzolytics, where Zhabilov was an officer and director for both companies and where Savov was a director for Immunotech but had a financial interest in the Asset Purchase Agreement.

47. However, Sakayan is informed and believes, and on that basis alleges, that the Asset Purchase Agreement was not approved by a majority of the Board who were not common nor interested directors; that the Asset Purchase Agreement was not approved by a majority of the stockholders in good faith; that the fact of the Zhabilov's common directorship was known at the time of the Asset Purchase Agreement; that the fact of Zhabilov's and Savov's financial interests was known at the time of the Asset Purchase Agreement; and that Asset Purchase Agreement was not fair as Enzolytics paid inadequate consideration for the assets purchased from Immunotech.

48. Sakayan is informed and believes, and on that basis alleges, that the Asset Purchase Agreement was entered into and/or performed in California.

**Demand Futility**

49. Sakayan is informed and believes, and on that basis alleges, that at the time Immunotech's Board of Directors ("Board") approved the Asset Purchase Agreement, two of the three directors on the Board had a financial interest in the Asset Purchase Agreement. Specifically, under the Asset Purchase Agreement, Zhabilov was to receive 4,000,000 shares of Enzolytics preferred stock to Zhabilov; Savov was to receive 71,900,000 shares of Enzolytics common stock; and the Zhabilov Trust, whose trustee was Zhabilov's wife, was to receive 50,000,000 shares of Enzolytics preferred stock and 175,000,000 shares of Enzolytics common stock.

50. Sakayan is informed and believes, and on that basis alleges, that after the Asset Purchase Agreement, Zhabilov became the sole director on the Board.

51. Sakayan is informed and believes, and on that basis alleges, that both at the time the Board approved the Asset Purchase Agreement and since that time to the present day, a majority of the directors on the Board had or have a financial interest in the Asset Purchase Agreement, making the pre-litigation demand requirement futile and excusing the requirement.

52. Notably, Sakayan did attempt to discuss the relationship between Immunotech and Enzolytics with Zakayan, without success. On February 16, 2021, Sakayan emailed Zhabilov and others to request a meeting on behalf of Immunotech shareholders to obtain more information about the relationship, but Zhabilov refused to schedule a meeting.

53. Likewise, on May 11, 2021, Sakayan emailed Zhabilov to resolve matters between them. Rather than engage in a discussion with Sakayan, Zhabilov's attorney responded to Sakayan's email by directing Sakayan to "cease direct communications to either Harry Zhabilov or Enzolytics."

### De Facto Merger and Mere Continuation

54. The Asset Purchase Agreement resulted in a de facto merger between Enzolytics and Immunotech and/or in Enzolytics being a mere continuation of Immunotech.

55. Sakayan is informed and believes, and on that basis alleges, that the companies had interlocking directorates and management at the time of the Asset Purchase Agreement, as Zhabilov was President of both companies as well as the Chairman of Immunotech's Board and sole director of Enzolytics. Further, pursuant to the Asset Purchase Agreement, Immunotech gave away its only significant asset, the Patented Treatment, to Enzolytics which then entered the drug development industry for immunotherapies which Immunotech had occupied.

56. Sakayan is informed and believes, and on that basis alleges, that in exchange, Enzolytics issued shares of Enzolytics stock, but these shares were not held by Immunotech or distributed equally to Immunotech's shareholders. Instead, these shares of Enzolytics stock were given to Zhabilov, Savov, and the Zhabilov Trust, all of whom had been Immunotech shareholder.

57. Sakayan is informed and believes, and on that basis alleges, that as part of the Asset Purchase Agreement, Enzolytics was also to assume certain debts of Immunotech.

58. Sakayan is informed and believes, and on that basis alleges, that Enzolytics failed to pay adequate consideration for the assets purchased under the Asset Purchase Agreement.

59. Following the Asset Purchase Agreement, Immunotech stopped operating as an ongoing business.

60. Sakayan is informed and believes, and on that basis alleges, that the Asset Purchase Agreement and de facto merger of Enzolytics and Immunotech failed to comply with applicable statutory requirements, including but not limited to notice to and approval by shareholders. Further, the de facto merger was the result

of self-dealing that only benefited a select few favored Immunotech shareholders to the detriment of other shareholders.

## FIRST CAUSE OF ACTION

**(Breach of Contract Against Defendants Enzolytics, Immunotech, and Doe Defendants)**

61. Sakayan incorporates by reference paragraphs 1 through 60.

62. Sakayan has performed all conditions, covenants, and promises required of him under the Contracts.

63. Immunotech breached the Contracts by failing to issue at least 85,810,252 shares of Immunotech stock to Sakayan.

64. Enzolytics is responsible for Immunotech's liability in breaching the Contracts as the Asset Purchase Agreement resulted in a de facto merger between Enzolytics and Immunotech and/or in Enzolytics being a mere continuation of Immunotech.

65. As a proximate result of the foregoing breaches, Sakayan has suffered damages including the lost value of the shares of Immunotech stock that should have been issued to Sakayan and the decreased value of those shares since the Asset Purchase Agreement, in an amount to be proven at trial but not less than $100 million.

## SECOND CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Defendants Enzolytics, Immunotech, and Doe Defendants)**

66. Sakayan incorporates by reference paragraphs 1 through 65.

67. Pursuant to the Contracts, Immunotech agreed to issue at least 85,810,252 shares of Immunotech stock to Sakayan.

68. Immunotech breached the Contracts by failing to issue the aforementioned shares of Immunotech stock to Sakayan.

69. Sakayan is informed and believes, and on that basis alleges, that Immunotech breached the implied covenant of good faith and fair dealing because it never intended to issue the aforementioned shares of Immunotech stock to Sakayan.

70. Enzolytics is responsible for Immunotech's liability in breaching the implied covenant of good faith and fair dealing as the Asset Purchase Agreement resulted in a de facto merger between Enzolytics and Immunotech and/or in Enzolytics being a mere continuation of Immunotech.

71. As a proximate result of the foregoing breaches, Sakayan has suffered damages including the lost value of the shares of Immunotech stock that should have been issued to Sakayan and the decreased value of those shares since the Asset Purchase Agreement, in an amount to be proven at trial but not less than $100 million.

## THIRD CAUSE OF ACTION

**(Breach of Fiduciary Duty Against Zhabilov and Doe Defendants)**

72. Sakayan incorporates by reference paragraphs 1 through 60.

73. Sakayan is informed and believes, and on that basis alleges, that Zhabilov was Immunotech's President and Chairman at all relevant times herein. As an officer and director of Immunotech, Zhabilov owed a duty to Sakayan, as an Immunotech shareholder, to exercise loyalty and good faith in the management and administration of Immunotech.

74. Zhabilov breached his fiduciary duty of loyalty and acted in bad faith regarding the shareholders of Immunotech stock by, among other things, negotiating, approving, and entering into the Asset Purchase Agreement without notice to Immunotech shareholders and without complying with applicable statutory requirements.

75. Zhabilov consented and/or directed Ray to conceal from Sakayan, by misrepresenting the facts, the sale of Immunotech's assets to Enzolytics.

76. The Asset Purchase Agreement was also the result of Zhabilov's self-dealing that only benefited a select few favored Immunotech shareholders, including Zhabilov and his family trust (Zhabilov Trust) to the detriment of other shareholders.

77. Immunotech received inadequate consideration from Enzolytics for the assets purchased by Enzolytics under the Asset Purchase Agreement. In turn, the Asset Purchase Agreement left Immunotech as an empty husk or shell of a company, again to the detriment to Immunotech shareholders.

78. By the acts, transactions, and course of conduct alleged herein, Zhabilov unfairly deprived Sakayan of the true value inherent in and arising from Immunotech and Enzolytics.

79. As a proximate result of Zhabilov's breach of his fiduciary duties, Sakayan been and will be harmed and has no adequate remedy at law.

80. In addition, as a proximate result of Zhabilov's breach of his fiduciary duties, Sakayan has suffered damages in an amount to be proven at trial but no less than $100 million.

### FOURTH CAUSE OF ACTION
### (Fraud Against All Defendants)

81. Sakayan incorporates by reference paragraphs 1 through 60.

82. Sakayan is informed and believes, and on that basis alleges, that Immunotech and Zhabilov purposely mislead, failed to disclose, and kept hidden from Sakayan and other Immunotech shareholders the terms and conditions of the Asset Purchase Agreement to perpetuate a fraud on Immunotech shareholders. As a result of the Asset Purchase Agreement, Immunotech was left as an empty husk or shell of a company, without any tangible assets, to the detriment to Immunotech shareholders. Following the Asset Purchase Agreement, Immunotech stopped operating as an ongoing business.

83. Enzolytics is responsible for Immunotech's liability for fraud as the Asset Purchase Agreement resulted in a de facto merger between Enzolytics and Immunotech and/or in Enzolytics being a mere continuation of Immunotech.

84. As a proximate result of the fraud, Sakayan has suffered damages including the lost value of his shares of Immunotech stock and the decreased value of those shares since the Asset Purchase Agreement, in an amount to be proven at trial but not less than $100 million.

## PRAYER

Wherefore, Sakayan prays for judgment against all Defendants as follows:

1. For damages in an amount to be proven at trial but not less than $100 million;

2. For a declaration that Immunotech and/or Enzolytics Immunotech must issue to Sakayan at least 85,810,252 shares of its share of stock;

3. For attorney's fees and costs of suit as allowed by contract or law;

4. For punitive damages as to the second, third, and fourth causes of action;

5. For pre-judgment and post-judgment interest as allowed by contract or law; and

6. For all such other and further relief as the Court may deem just and proper.

Dated: December 19, 2022           **DAVID H. PIERCE & ASSOCIATES PC**

/s/ *Larry Liu*
David Pierce
Codette Wallace
Larry Liu

Attorneys for Plaintiff
ELIE SAKAYAN

**VERIFICATION**

I, Elie Sakayan, declare:

I am the plaintiff in this action. I have reviewed the foregoing First Amended Verified Complaint and authorized its filing. Based on my own investigation and my counsel's investigation, the facts set forth therein are true and correct to the best of my knowledge, information, and belief.

I declare under the penalty of perjury under the laws of the United States that there foregoing is true and correct.

Dated: December 19, 2022

_____
Elie Sakayan